Patricia BOHAM, As Administrator of the Estate of Heidi Thompson, Deceased, and Larry and Patricia Boham, Individually, Appellees,

v.

CITY OF SIOUX CITY, IOWA, Municipality, Defendant,

and

Sioux City Community School District and Barbara Marmo, Appellants.

SIOUX CITY COMMUNITY SCHOOL DISTRICT and Barbara Marmo, Third–Party Plaintiffs,

v.

Ralph Raymond CONYERS and Lesley Lowery, Third–Party Defendants.

No. 96–107.

Supreme Court of Iowa.

July 23, 1997.

432

Michael R. Hellige of Shull, Cosgrove, Hellige & Lundberg, Sioux City, for appellants.

Stanley E. Munger and Jay E. Denne of Munger & Reinschmidt, Sioux City, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Eight-year-old Heidi Thompson was struck by a pickup truck after she was allowed to enter a crosswalk by appellant Barbara Marmo, a crossing guard employed by appellant Sioux City Community School District. The school district and Marmo ("defendants") appeal from a jury verdict awarding damages to Thompson's estate and her parents, appellees Larry and Patricia Boham. The defendants claim there was insufficient evidence to support findings of negligence and proximate cause. They also contest the jury's award of damages for Thompson's predeath mental anguish and loss of function of mind and body because Thompson was unconscious upon impact until the time of her death. Upon our consideration of the parties' arguments and our review of the record, we

conclude (1) there is substantial evidence to support the jury's findings of negligence and proximate cause, and (2) error was not preserved on defendants' challenge to the damage award. Accordingly, we affirm the trial court's judgment.

## I. Background Facts and Proceedings.

We view the facts in the light most favorable to the jury's verdict. *Morgan v. American Family Mut. Ins. Co.*, 534 N.W.2d 92, 96 (Iowa 1995). From this perspective, the following facts were shown by substantial evidence. *See* Iowa R.App. P. 14(f)(1) ("Findings of fact in a law action ... are binding upon the appellate court if supported by substantial evidence.").

On January 2, 1992, Heidi Thompson was a second-grade student at Everett Elementary School on West Third Street in Sioux City, Iowa. Barbara Marmo was employed by the school district as a crossing guard for the intersection of West Third Street and Hamilton Boulevard, a busy intersection near Everett Elementary.

Thompson attended school on January 2, and on her way home that afternoon, took West Third Street to Hamilton Boulevard. Marmo was present at the intersection when Thompson and another young girl arrived there. The children waited for permission to cross. Marmo pushed the button controlling the pedestrian signal and the "WALK" light came on. Marmo told the girls they could cross the street, and Thompson began running across Hamilton Boulevard, in the crosswalk, looking straight ahead.

Marmo was focused on the children and did not see a pickup, driven by Ralph Conyers, approaching the intersection on Hamilton. Conyers was in the right-hand lane traveling south on Hamilton when he noticed the stoplight at the intersection of West Third and Hamilton was red. Conyers applied the brakes on his vehicle, but there was no response. (The numerous defects in this vehicle, aptly described as a "road hazard," are detailed in our opinion affirming Conyers' conviction of homicide by vehicle. *See State v. Conyers*, 506 N.W.2d 442, 443 (Iowa 1993).) Conyers apparently saw the children enter the street and he swerved to the left to avoid them.

Meanwhile, Marmo finally noticed Conyers' pickup when it was in the intersection. (Marmo had no explanation for why she did not see him sooner.) She yelled Thompson's name to warn her. Thompson stopped, turned around to face Marmo, and was struck by the pickup. She was immediately rendered unconscious and remained so until she was pronounced dead a half-hour later. (The child crossing the street at the same time as Thompson was not hit by Conyers' vehicle as she was still in the outer lane for southbound traffic when Conyers entered the intersection.)

This action was filed by Thompson's estate and her parents, seeking damages on account of Thompson's wrongful death from the school district, Marmo and the City of Sioux City. The school district and Marmo filed a third-party petition against Conyers and the owner of the pickup he was driving, Leslie Lowery. A default judgment was entered against Conyers and the balance of the case proceeded to trial before a jury.

The jury returned a verdict finding the city, the school district, Marmo and Conyers at fault; it concluded, however, that any fault of the city was not a proximate cause of the accident. Liability as to the remaining parties was assessed 20% against the school district and Marmo and 80% against Conyers and Lowery. The jury awarded damages to both parents and to the estate. The damages awarded to the estate included amounts for mental anguish before death and for loss of function of mind and body before death. The trial court entered judgment in accordance with the jury's verdict.

The school district and Marmo filed a motion for judgment notwithstanding the verdict. They claimed there was insufficient evidence to support a finding of negligence because Marmo was entitled to assume Conyers would obey the law and when she reasonably knew he would not, there was inadequate time for Marmo to prevent the accident. They also argued there was insufficient evidence to support a finding that the specific acts of negligence claimed by the plaintiffs were proximate causes of the acci-

dent. The trial court overruled the motion and the defendants appealed.

II. *Sufficiency of Evidence to Support Findings of Negligence and Proximate Cause.*

■ A. *Standard of review.* The defendants claim the trial court should have granted their motion for directed verdict made at the close of the plaintiffs' case and renewed upon completion of the evidence. We review a trial court's denial of a motion for directed verdict for correction of errors of law. *Podraza v. City of Carter Lake,* 524 N.W.2d 198, 202 (Iowa 1994). When a party challenges the sufficiency of the evidence to support the jury's factual findings, we examine the record to determine whether substantial evidence exists to support the challenged findings. *Morgan,* 534 N.W.2d at 96. In assessing the evidence, we view the record in the light most favorable to the plaintiffs, taking into consideration all reasonable inferences that may fairly be made. *Bredberg v. Pepsico, Inc.,* 551 N.W.2d 321, 326 (Iowa 1996). Accordingly, where a defendant's challenge is to the sufficiency of the evidence, we will affirm the trial court's denial of the defendant's motion for directed verdict if the plaintiff's claims are supported by substantial evidence. *Poulsen v. Russell,* 300 N.W.2d 289, 296 (Iowa 1981).

■ Questions of negligence and proximate cause are ordinarily for the jury. Iowa R.App. P. 14(f)(10). Only in extraordinary cases may these factual issues be decided as a matter of law. *Id.*

■ B. *Right to assume motorist will obey the law.* The defendants first rely on the general contention that Marmo had the right to assume Conyers would obey the traffic laws. They cite the principle embodied in Iowa Rule of Appellate Procedure 14(f)(9):

A motorist upon a public highway has a right to assume that others using the road will obey the law, including statutes, rules of the road and necessity for due care, at least until the motorist knows or in the exercise of due care should have known otherwise.

This rule has been extended to pedestrians, *Tobin v. Van Orsdol,* 241 Iowa 1331, 1335, 45 N.W.2d 239, 242 (1950), but we have never considered its applicability to crossing guards. Nevertheless, the trial court instructed the jury without objection from the plaintiffs that

Ralph Conyers, Heidi Thompson and Barbara Marmo had a right to use the street and could assume that all persons using the street would obey the law until they knew, *or in the exercise of reasonable care,* should have known the user of the street was not going to obey the law.

(Emphasis added.) Consequently, this principle became the law of the case. *See Poulsen,* 300 N.W.2d at 294 ("Unless objected to by a party, an instruction to the jury, right or wrong, is the law of the case.").

■ The defendants argue Marmo had a right to assume Conyers would stop and by the time she realized he would not stop, it was too late for Marmo to prevent the accident. This argument ignores the qualification on the rule: one may rightfully assume a motorist will obey the law *only until reasonable care should alert one to the contrary.* Consequently, the critical issue in this case was the standard of reasonable care for Marmo, a school crossing guard.

■ We think the evidence supported a finding Marmo, as a crossing guard, did not have "the absolute right" to assume Conyers would obey the law, as argued by the defendants. The plaintiffs introduced substantial evidence that the essence of a crossing guard's duty is to anticipate the possibility that motorists will *not* obey the rules of the road. Therefore, the jury could have found Marmo had a higher standard of care than the typical motorist or pedestrian in determining whether an approaching motorist will stop as required by the traffic laws. Consequently, Marmo's right to assume Conyers would obey the law was tempered by her duty to Heidi Thompson to use reasonable care in ascertaining whether Conyers would stop. And that duty is measured by the standard of care applicable to a crossing guard as shown by the credible evidence. We turn now to that evidence.

The plaintiffs introduced the testimony of an expert witness, Dan Burden, who manages the school crossing guard program in Florida; this program trains all school crossing guards within the state. Burden testified that a crossing guard should not permit children to cross the street until the guard is confident all traffic has stopped or will stop. He said, in substance, it is predictable that motorists will make mistakes and the role of the crossing guard is to be sure these mistakes do not result in harm to the children. Marmo herself testified at trial that vehicles traveling south on Hamilton Boulevard had run the red light at this intersection in the past and it was foreseeable that it could happen again.

The defendants point out the plaintiffs introduced no testimony from an accident reconstructionist or any other witness pinpointing the exact location and speed of Conyers' vehicle at relevant times. The testimony of eyewitnesses, however, clearly established that Conyers' pickup was traveling south on Hamilton Boulevard when it struck Thompson as she ran across Hamilton. The jury could have made a reasonable inference based on their common sense that Conyers' vehicle was within Marmo's visual range before she told the children they could cross the street, and Marmo would have seen Conyers' pickup heading toward the intersection had she looked north on Hamilton.

From the testimony presented at trial, the jury could have found that Marmo, had she exercised the due care required of a crossing guard, would have realized that Conyers' vehicle was not stopping in accordance with the red light and therefore, she had no right to assume he would obey the traffic laws. Accordingly, the jury could also have concluded that Marmo, in the exercise of reasonable care, should not have released the children to enter the crosswalk. Therefore, the trial court did not err in refusing to direct a verdict in favor of the school district and Marmo.

C. *Specifications of negligence.* The defendants also complain there was inadequate evidence that their actions constituted negligence and were proximate causes of the accident. We disagree.

■ 1. *Instruction of school children.* The plaintiffs claimed the defendants failed "to provide adequate safety precautions and instructions for school children." The plaintiffs' expert, Dan Burden, testified children should be instructed not to run across the street. He explained that when children run, they concentrate on running instead of searching for traffic or other potentially harmful objects. He said children should be taught never to enter the path of something that could hit them. Neither the school district nor Marmo instructed the school children on these matters. *Cf. Andrews v. City of Margate,* 546 So.2d 106, 107 (Fla.Dist.Ct. App.1989) (reversing summary judgment for City because testimony of expert that crossing guard should have instructed deceased child to walk his bicycle through intersection, rather than ride it, generated jury issues on City's negligence and proximate cause).

The evidence here showed Thompson and another child entered the crosswalk, but only Thompson ran. As she ran, she looked straight ahead, not toward approaching traffic. The other child, who did not run, was not hit by Conyers' vehicle. We think the jury could have found Thompson would likewise have averted the accident had she been walking across the street, watching for traffic.

■ 2. *Inadequate crossing time.* The danger of children running across the street was also critical to the plaintiffs' claim of negligence based on the defendants' "failure to notify proper authorities of inadequate crossing times at the intersection of West Third and Hamilton." There was abundant evidence the school district had received complaints that the timing sequence of the lights was too short for pedestrians. Burden confirmed that the crossing times were inadequate. Neither the school district nor Marmo notified the proper authorities of this problem. Although Thompson was not struck because she did not have enough time to get across the street, the plaintiffs argued the inadequate crossing time created an atmosphere that led the children to believe they had to run across the intersection to make it to the other side before the light

changed. The crossing guards did nothing to dissuade the children from this belief. We have already discussed how the jury could have found Thompson's running contributed to the accident.

 3. *Inadequate training and clothing.* Another specification of negligence submitted to the jury was the school district's alleged "failure to adequately select, train, clothe, and supervise the adult school crossing guard." Marmo was not wearing a florescent vest at the time of the accident because the school district did not have any available. Burden testified crossing guards should be uniformed with highly visible, florescent-colored vests so the guards attract the attention of approaching motorists, who will then recognize they are nearing a school crossing. He further testified had Marmo been wearing such a vest, Conyers would have had an earlier opportunity to realize school children were in the vicinity. Because Conyers' approach to the intersection was uphill, he could have released his foot from the accelerator sooner, causing his vehicle to slow down and possibly avoiding the collision.

As for deficiencies in training, Marmo testified the only training she had was from the prior crossing guard who told Marmo she should push the button to activate the "WALK" signal and then "make sure the kids get across the street safely." Burden testified crossing guards should be trained not to release children to cross the street until the guard is .assured all traffic has stopped or is stopping. Clearly, the jury could have found that had Marmo been trained to do so here, she would not have released Thompson to cross the street and Thompson would not have been hit by Conyers' pickup.

 4. *Improper lookout.* Two other specifications of negligence are similar to the lack-of-training claim. The plaintiffs asserted Marmo failed "to properly direct Heidi Thompson as to crossing Hamilton Boulevard" and failed "to keep a proper lookout in regard to Heidi Thompson crossing Hamilton Boulevard." As we have previously noted, the jury could have found that Marmo's act of releasing Thompson to cross the street without first ascertaining that Conyers' vehi-

cle was stopping was negligence and a proximate cause of Thompson's injuries and death.

 5. *Calling Thompson's name.* The plaintiffs' final claim of negligence was Marmo's calling Thompson's name "when it was not safe to do so." Conyers testified that had Thompson not stopped in the inside, southbound lane of traffic in response to Marmo's calling of Thompson's name, Thompson would not have been in the path of his vehicle when it entered the intersection. Although the defendants argued Marmo's instinctive reaction to the impending collision by calling Thompson's name was reasonable, that issue was for the jury to decide.

We conclude, based on our review of the record and the arguments of the parties, there was substantial evidence to support the trial court's submission of these specifications of negligence to the jury.

### III. *Predeath Damages.*

The defendants claim the court erred in submitting the estate's claim for damages based on Thompson's predeath mental anguish and predeath loss of function of mind and body. They point out Thompson was unconscious from the time she was struck by Conyers' pickup until her death. Consequently, they submit, Thompson had no conscious awareness of her situation which would give rise to mental anguish, nor did she have any conscious inability to use her mind or body. The defendants claim it was erroneous to submit these elements of damage under these facts. We do not address the merits of the defendants' argument, however, because we conclude error was not preserved.

 A. *Error preservation rule.* We review objections to instructions on assigned error. *Grefe & Sidney v. Watters,* 525 N.W.2d 821, 824 (Iowa 1994). We are precluded from considering on appeal any error in or objection to an instruction that was not asserted in the trial court. Iowa R. Civ. P. 196.

 Rule 196 requires that a party specify the matter to which the party objects and the grounds for the objection. *Id.; ac-*

*cord Morgan v. Perlowski,* 508 N.W.2d 724, 729 (Iowa 1993). We have interpreted this rule to require an objection "sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury." *Moser v. Stallings,* 387 N.W.2d 599, 604 (Iowa 1986). When the objection is to the sufficiency of the evidence supporting an instruction, the complaining party must specify that portion of the instruction lacking evidentiary support and the particular factual deficiency. *Cf. Bauer v. Cole,* 467 N.W.2d 221, 224 (Iowa 1991) (holding to preserve error for trial court's failure to give a requested instruction, party must specify "that part of the instruction which was requested and refused" and "identify the particular points of law or questions of fact on which the court supposedly erred by failing to instruct"). A party may not amplify or change an objection on appeal. *Moser,* 387 N.W.2d at 604.

■ B. *Record made in the trial court.* In their brief, the school district and Marmo claim error was preserved on their challenge to the submission of predeath damages by their objection to instruction 39, which specified the estate's damages, including mental anguish and loss of mind and body. Their attorney's objection, in context, was as follows:

> Since this is the final time that I can make any record, initially I want to again renew the motions I made at the close of plaintiffs' case and all the evidence. We don't think this [case] should be submitted against my clients at all.
>
> Instructions No. 15, 18, 19 and 20 generally are specifications of fault against my clients. We don't think there's sufficient evidence in the record to generate a jury question on those issues, *and I would add to that instructions No. 39 and 41, which are the damage instructions. We don't think there's sufficient evidence in the record to engender jury questions on these points.*

The motions to which the defendants refer in making their record on the instructions are their motions for directed verdict made at the close of the plaintiffs' case and at the close of evidence. Those motions focused on the lack of evidence of negligence and proximate cause, as discussed above.

We conclude there is nothing in the general objection made to instructions 39 and 41 that would have alerted the trial court to the arguments made on appeal. First of all, the insufficient-evidence objection to these instructions appeared to be tied to the insufficiency-of-the-evidence challenge made in the motions for directed verdict. That challenge had nothing to do with predeath damages and their recoverability when the victim is unconscious from the time of injury until death. Moreover, the two damage elements upon which the defendants focus on appeal are not even included in instruction 41, which outlines the parents' recoverable damages; nevertheless, the defendants lodged their general "insufficient-evidence" objection at trial to this instruction too. We fail to see how the trial court should have discerned that the defendants were specifically concerned about the submissibility of predeath damages contained only in instruction 39.

In summary, the defendants did not adequately identify the specific portion of instruction 39 that was not supported by the evidence or the specific deficiency in the evidentiary support for that instruction. It is too late to supply these particulars on appeal.

**AFFIRMED.**