Robert L. Bellman, as Administrator
of Estate of Derek R. Bellman,
Deceased, Plaintiff,

v.

The City of Cedar Falls, Defendant.

The CITY OF CEDAR
FALLS, Appellee,

v.

CEDAR FALLS COMMUNITY
SCHOOL DISTRICT,
Appellant.

No. 98–1659.

Supreme Court of Iowa.

Sept. 7, 2000.

Jim D. DeKoster and Beth E. Hansen of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

James E. Walsh, Jr. and Christy R. Liss of Clark, Butler, Walsh & Hamann, Waterloo, for appellee.

SNELL, Justice.

This appeal arises from a tragic accident which, ironically, occurred during a safety program for a class of kindergarten students. One of the students, Derek Bellman, died from injuries inflicted by a golf cart kept on hand for use during the safety presentations. A judgment was entered against the City of Cedar Falls after it admitted liability, and the City sought contribution from the Cedar Falls Community School District. A jury determined the District shared fault for the accident. The District now appeals various rulings related to that finding. Because we determine the district court committed no reversible error, we affirm.

I. Background Facts and Proceedings

The facts surrounding the accident are largely undisputed.

In September 1995, the City of Cedar Falls held its annual safety program for the kindergarten students of several elementary schools. This long-running program, called "Safety City," was jointly conducted by the police and fire divisions of

the City's Department of Public Safety, Sartori Memorial Hospital, and Cedar Falls Utilities. The police division was in overall charge of administering the program.

Safety City was held at the City's Recreation Center during the course of a week. Each morning and afternoon two kindergarten classes would visit the site. One class would attend presentations put on by the fire and utilities personnel inside the building, while the other class would view presentations by the police division and hospital in the parking lot outside. The classes would then trade places.

The police division's portion of the program included traffic safety and "stranger danger" demonstrations conducted by three police officers, Sergeant Todd Wilson, and Officers Laurel Magee and Tim Eich. Using a motorized golf cart and a miniature intersection, Sergeant Wilson would simulate a motorist while Officer Eich played the part of a careless pedestrian. Sergeant Wilson would also act out the role of a stranger attempting to entice the children to the cart with an offer of candy. Officer Magee, in uniform, narrated the scenes and instructed the students on the safety lessons they were meant to convey. After these and other demonstrations, the students were allowed to examine a patrol vehicle parked nearby.

On the morning of September 15, 1995, the final day of the program, Safety City was visited by two kindergarten classes from North Cedar Elementary School in the Cedar Falls Community School District. The classes were led by their teachers, Judy Hagen and Katie Duax. Each class was also accompanied by two parents. Upon arriving at Safety City, Ms. Hagen's class went inside the community center while Ms. Duax's class of eighteen pupils, Derek among them, remained in the parking lot.

The police division's program concluded without incident. It was followed by the hospital's presentation, conducted by two paramedics at the rear of an ambulance.

Sergeant Wilson parked the golf cart nearby and watched from the seat. When the class was invited to tour the ambulance, he joined the other adults who were assisting the children entering and exiting the emergency vehicle. The golf cart was left unattended with the key in the ignition.

At some point one of the parents observed, without alarm, that several of the children had gone over to the cart and gotten on. Shortly thereafter, one of the children apparently stepped on the accelerator pedal, releasing the cart's brake and activating its electric motor. Before any of the adults could stop the cart, it had forcefully pinned Derek against the side of the ambulance. Derek sustained injuries from which he later died.

Derek's estate brought a wrongful death action against the City. The City cross-petitioned against both the District and the hospital, alleging they were in some measure responsible for the accident. The City eventually admitted fault and a trial was held solely on the issue of damages, resulting in a jury award to Derek's estate of $909,260.51. Another trial was then held on the City's claim for contribution. The jury returned a verdict finding the City 66% at fault, and the District 34% at fault.

The School District's appeal raises several issues in connection with the district court's adverse rulings on the District's motion to compel discovery, motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and new trial. We address each issue in turn, reviewing for errors of law. *Lovick v. Wil-Rich*, 588 N.W.2d 688, 692 (Iowa 1999); *Keystone Elec. Mfg., Co. v. City of Des Moines*, 586 N.W.2d 340, 345 (Iowa 1998).

## II. Sufficiency of Evidence

The jury was instructed to allocate a percentage of fault to the District if the City proved that Derek's death was proximately caused by the District's failure to use ordinary care in (1) implementing

school board policy for field trips, or (2) supervising the kindergarten class at Safety City. The District contends the evidence did not establish that it failed in either obligation, *i.e.*, that it was negligent, or that any negligence on its part was the proximate cause of Derek's death.

■ When a party challenges the sufficiency of evidence to support the jury's factual findings, we examine the record to determine whether those findings are supported by substantial evidence. *Boham v. City of Sioux City*, 567 N.W.2d 431, 435 (Iowa 1997). In so doing, we must view the evidence in the light most favorable to the verdict, taking into consideration all reasonable inferences the jury may have made. *Id.* The factual issues of negligence and proximate cause are for the jury to resolve, and only in exceptional cases may we decide them as a matter of law. Iowa R.App. P. 14(f)(10); *Vogan v. Hayes Appraisal Assocs., Inc.*, 588 N.W.2d 420, 424 (Iowa 1999).

■ As noted, the facts set forth above are largely undisputed and could be gathered from the trial testimony of the adults present at the scene of the accident. Additional testimony was offered by Dr. Edward Dragan, an expert in the field of educational administration, and Brian Campbell, North Cedar Elementary School's new principal at the time of the accident.

During Principal Campbell's testimony, the jury was informed the District's policy manual had the following rule: "Supervision shall be provided as needed for student activities. The principal will be responsible for determining the amount and type of supervision appropriate for the activity." Principal Campbell testified that he could not recall having reviewed or evaluated the Safety City program prior to the accident, or having spoken with Ms. Duax about the trip, or having made a determination as to the type of supervision which would be appropriate. Instead, he testified he relied on the experience of the teachers and the knowledge that the field trip was in a controlled environment and had been going on for a number of years. He further testified he did not believe it necessary to give specific instructions to parent volunteers concerning supervision of the children at Safety City.

Dr. Dragan gave a contrary opinion, critical of the principal's failure to hold a meeting with the teachers prior to the field trip during which they would discuss the appropriateness of the supervision planned for the activity. He testified this was particularly necessary given that Ms. Duax was in her first year at North Cedar, given the age of the children, and given that the field trip was taking place early in the school year. He suggested the teacher should have been instructed to meet with the parent volunteers beforehand to explain the nature of the field trip and to specifically assign to them students who they would supervise.

Dr. Dragan also opined that Ms. Duax did not provide the appropriate level of supervision at Safety City. He referred to evidence that she was facing the side door of the ambulance at the time of the accident, helping the children alight from the vehicle. He contended she should have been in a position to supervise the entire class, having one of the other adults assist the students at the door. Dr. Dragan reiterated that the teacher should have assigned to each parent specific supervisory responsibilities, including a group of students to supervise.

After considering the record in the light most favorable to the verdict, we believe substantial evidence supports a finding of negligence under either specification. At the time of the accident there were eight adults within a few yards of the class—three police officers, two paramedics, two parents, and the teacher. But only one, Ms. Duax, had the District's responsibility for supervising the children. With assistance from other adults present, she was in fact supervising the children exiting the side of the ambulance, protecting them

from the danger of a fall. The jury could find, however, that her supervision did not extend to other children in the class, who were able to move from the ambulance to play on the unattended golf cart. The jury could further find that the principal's and teacher's failure to delegate supervisory responsibility to other adults who could have supervised the children while Ms. Duax was occupied constituted a failure to use ordinary care.

The District points out that one of the parent volunteers did notice the children on the cart. It argues that Ms. Duax and the other adults had no way of knowing that Sergeant Wilson left the key in the golf cart, and that absent this knowledge, it was not foreseeable the cart posed a danger to the children.

We find that it was a question for the jury whether one with the responsibility of supervising the children, using ordinary care, would have intervened upon observing that some of the children had moved to the golf cart. It was uncontroverted that the children had no permission to be on the cart. Taking into account the motorized cart's potential mobility, the jury may have found it was inconsistent with ordinary care to assume the cart was a safe place for the children to play. Ms. Duax in fact testified that, had she seen the children on the cart, she would have instructed them to get off. We conclude that a finding of negligence under either specification is supported by the evidence.

■ The law does not impose liability for negligence unless the breach of a duty of care is also the proximate cause of the injury. *See Hartig v. Francois*, 562 N.W.2d 427, 429 (Iowa 1997). Proximate cause has two components: (1) the defendant's conduct must have in fact caused the damages; and (2) the policy of the law must require the defendant to be legally responsible for them. *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999). With respect to the first component, a plaintiff must at a minimum prove that the damages would not have occurred but for

the defendant's negligence. *Id.* We believe the City has done so here. The jury, upon finding the District was negligent, could also find the accident would not have occurred but for the negligence. The cart would not have started had the children been prevented from playing on it.

■ Further, in order to satisfy the cause-in-fact component, the plaintiff must also show the defendant's conduct was a "substantial factor" in bringing about the harm. *Hayward v. P.D.A., Inc.*, 573 N.W.2d 29, 31 (Iowa 1997). On this issue, we look to the proximity and foreseeability of the harm flowing from the actor's conduct. *Scoggins v. Wal–Mart Stores, Inc.*, 560 N.W.2d 564, 567 (Iowa 1997). We have said:

> If upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable, and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic, there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created.

*Hollingsworth v. Schminkey*, 553 N.W.2d 591, 597 (Iowa 1996) (quoting *Chenoweth v. Flynn*, 251 Iowa 11, 17–18, 99 N.W.2d 310, 314 (1959)). With this in mind, we believe a jury could conclude the District's negligence was a substantial factor in bringing about the accident. It is not necessary that the actual consequences of the District's negligence should have been foreseen. *See Scoggins*, 560 N.W.2d at 567, 570. It is enough that it was foreseeable some injury might result from the District's failure to properly supervise the class and intervene when the children began playing on the cart. We discern nothing particularly unnatural or unreasonable in the jury connecting Derek's death with such a finding of negligence.

With respect to the second component, *i.e.*, the policy of the law, responsibility will be extended to those consequences which have in fact been produced by an actor's conduct. The general rule is that an actor's conduct is the proximate or legal cause of harm to another if (1) his conduct is a "substantial factor" in bringing about the harm and (2) there is no other rule relieving the actor of liability because of the manner in which his negligence resulted in the harm. *Id.* at 567 (citing *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991)). Thus, the jury could find the District was legally responsible for the harm if the City showed the injuries sustained were in fact caused by the District's conduct and liability was not prevented by a later, superseding force. *See id.*, *Hagen v. Texaco Ref. & Mktg., Inc.*, 526 N.W.2d 531, 537 (Iowa 1995). "[A]n intervening force which falls squarely within the scope of the original risk will not supersede the defendant's responsibility." *Hollingsworth*, 553 N.W.2d at 598. Because it was foreseeable the children would be curious and interested in the golf cart, the jury could conclude their conduct fell within the original risk created by the District's actions.

Substantial evidence supports a jury finding that the District was negligent and that its negligence was the proximate cause of Derek's injuries.

### III. Immunity

#### A. Section 670.4(10)

The District alternatively contends that it is immune from liability in this case. Suits against the government may be maintained only to the extent immunity has been expressly waived by the legislature. *Baker v. City of Ottumwa*, 560 N.W.2d 578, 583 (Iowa 1997). Iowa Code chapter 670 governs tort liability of governmental subdivisions, including school districts, *see* Iowa Code § 670.1(2) (1999) (defining "municipality" to include a school district), subjecting them to liability for the torts of their officers and employees unless the tort falls within one of the exemptions spelled out in section 670.4. *Baker*, 560 N.W.2d at 582. One such exemption applies to

> [a]ny claim based upon an act or omission of an officer or employee of the municipality ... if the damage was caused by a third party, event, or property not under the supervision or control of the municipality, unless the act or omission of the officer or employee constitutes actual malice or a criminal offense.

Iowa Code 670.4(10). The District asserts that Derek Bellman's death was caused by a third party, event, or property not under its supervision or control, specifically, Sergeant Wilson leaving the key in the golf cart's ignition. Thus, the District argues section 670.4(10) immunizes it from any liability.

The District acknowledges, however, that it had a duty to supervise and control the children in Derek's class. We have observed that school districts are charged with the care and control of children and must exercise the same standard of care toward them that a parent of ordinary prudence would observe in comparable circumstances. *Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999); *Burton v. Des Moines Metro. Transit Auth.*, 530 N.W.2d 696, 700 (Iowa 1995). Thus, to the extent Derek's death resulted from the children's actions in climbing onto the cart and activating the motor, the immunity of section 670.4(10) would have no application should the jury find the accident was, in part, proximately caused by a failure of the District to adequately supervise and control them. Such was the basis of the City's claims, and as we have discussed, substantial evidence supports the jury's affirmative finding on the issue. We conclude section 670.4(10) does not afford the protection from suit claimed by the District in this case.

#### B. Section 670.4(3)

The District relies on another exemption from liability found in section

670.4, commonly known as discretionary function immunity. Section 670.4(3) immunizes the District from

> [a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code § 670.4(3). The District contends it is entitled to this immunity "to the extent that the city's claims were based upon the exercise or performance or failure to exercise or perform a discretionary function or duty."

 The District's liability was predicated on its failure to use ordinary care either in implementing school board policy for field trips, or in supervising the kindergarten class at Safety City. We apply a two-step analysis to each specification of negligence to determine whether the District's challenged actions fall within the discretionary function exemption, inquiring (1) whether the action in question was a matter of judgment or choice for the acting employee and (2) whether, if an element of judgment is involved in the challenged conduct, the judgment is of a kind that the discretionary function exception was designed to shield. *Goodman v. City of Le Claire*, 587 N.W.2d 232, 237–38 (Iowa 1998) (citing *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If the answer to either question is "no," the discretionary function exemption does not apply.

With respect to the first specification of negligence, that the District failed to use ordinary care in implementing its policy for field trips, the District's policy manual required that the principal determine "the amount and type of supervision appropriate for the activity." Although the decision as to what supervision should have been provided on the field trip was a matter for the principal's judgment, the requirement that he actually make a determination about the appropriate amount and type of supervision was not a matter

of choice. It is specifically mandated by the policy. The City's claim was premised on Principal Campbell's failure to exercise that choice, and there is evidence supporting that conclusion. The principal acknowledged he had made no determination as to what type of supervision was appropriate at Safety City, nor had he reviewed or evaluated the field trip, or met with Derek's teacher beforehand. We conclude the discretionary function exemption does not apply to this specification of negligence; it fails the first step of the analysis.

 As to the second specification of negligence, that the District failed to use ordinary care in supervising the class, Ms. Duax's actions in carrying out her supervisory duties at Safety City did involve matters of judgment. But the judgment is not of the kind the discretionary function exception was designed to shield. The exception protects governmental actions and decisions which are made based on considerations of public policy grounded on social, economic, and political reasons. *See id.* at 237–40. Such policy considerations are not involved in the decisions made by a teacher in supervising her class. *Cf. Hacking v. Town of Belmont*, 143 N.H. 546, 736 A.2d 1229, 1233–34 (1999) (finding discretionary function immunity inapplicable to decisions of referees and coaches supervising basketball game where student injured); *Alake v. City of Boston*, 40 Mass.App.Ct. 610, 666 N.E.2d 1022, 1024–25 (1996) (finding discretionary function immunity inapplicable to claim of negligent supervision by chaperones on school field trip). Under the second step of the analysis, the discretionary function immunity does not apply to this claim.

We conclude the discretionary function immunity doctrine does not provide the District an exemption from liability because the requirements for its application, as outlined in *Goodman*, are not met.

IV. Jury Instructions

■ The District challenges the district court's refusal to give certain jury instructions. Our standard of review for jury instructions is whether prejudicial error by the trial court has occurred. *Thavenet v. Davis*, 589 N.W.2d 233, 236 (Iowa 1999). A trial court does not err in refusing to submit a proposed instruction when its concepts are embodied in other instructions submitted to the jury. *State v. Atwood*, 602 N.W.2d 775, 784 (Iowa 1999); *Smith v. Air Feeds, Inc.*, 556 N.W.2d 160, 166 (Iowa App.1996). The court must give a requested instruction if it correctly states the law, applies to the case, and is not stated elsewhere in the instructions. *Foggia v. Des Moines Bowl–O–Mat, Inc.*, 543 N.W.2d 889, 892 (Iowa 1996).

A. Iowa Code section 670.2

■ The District's requested jury instruction No. 4 would have told the jury that they could not assign any fault to the District for any acts or omissions of the parent volunteers at Safety City. It is based on Iowa Code section 670.2, providing in pertinent part:

> Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.
>
> For the purposes of this chapter, employee includes a person who performs services for a municipality whether or not the person is compensated for the services, *unless the services are performed only as an incident to the person's attendance at a municipality function.*

Iowa Code § 670.2 (emphasis added). The District contends the parent volunteers may not be considered "employees" for whose torts it would be liable under this section, as any supervisory services they performed were only incidental to their attendance at Safety City. The District expresses concern that, in the absence of such an instruction, the jury may have attributed to the District negligence on the part of the parent volunteer who observed the children on the golf cart prior to the accident.

■ The jury was not instructed that any duty to supervise the children was imposed on the parent volunteers, nor was the jury to determine whether they were negligent. However, no evidence was presented of any duty on the parent volunteers that would require an instruction. The jury was clearly instructed that the District could not be found at fault unless it was proven the District had failed to use ordinary care in supervising the children at Safety City, or in implementing school board policy for field trips. Instructions that are not related to the factual issues to be decided by the jury should not be submitted even though they may set out a correct statement of the law. *Bride v. Heckart*, 556 N.W.2d 449, 452 (Iowa 1996). We find the court did not err in declining to give the requested instruction.

B. Right of Assumption

■ The District's requested jury instruction No. 1 concerned a right of assumption. It would have informed the jury that "[o]ne may presume the due care of others until he knows or in the exercise of reasonable care should know otherwise." *Jorgensen v. Horton*, 206 N.W.2d 100, 105 (Iowa 1973). The District contends the instruction was appropriate and the court erred in refusing to give it because the District's employee was entitled to presume Sergeant Wilson would not leave the key in the golf cart's ignition.

The presumption relied on by the District would not apply to those who are not themselves exercising ordinary care. 65A C.J.S. *Negligence* § 118(3) (1966). We have previously determined it was a jury issue whether the District could assume the golf cart was safe for the children to play on, or whether in the exercise of ordinary care it was required to intervene.

The District was free to argue it could not have anticipated Sergeant Wilson would leave the key in the golf cart, and that the cart was otherwise harmless. We find no prejudicial error in the court's refusal to give the requested instruction.

### C. Specifications of the City's Negligence

The District additionally requested an instruction that would have informed the jury about the nature of the City's claim for contribution against it, and would have set forth different specifications of negligence under which the City had admitted liability. The District complains the jury was only instructed that the City admitted its liability. In the absence of an instruction setting forth the manner in which the City was negligent, the District contends the jury was unable to properly and accurately compare the City's fault with that of the District. *See, e.g., Schwennen v. Abell*, 471 N.W.2d 880, 886 (Iowa 1991).

Without deciding whether the district court should have given such an instruction, we find that any error was not prejudicial. The basis of the City's liability—Sergeant Wilson's action in leaving the golf cart unattended with the key in the ignition—was clear from the evidence. We are convinced the jury had no difficulty in comparing the fault of the parties without the instruction.

### V. Contribution

The District contends the City is not entitled to contribution as a matter of law. Contribution is an equitable remedy requiring joint tortfeasors liable to an injured third party to share the burden of damages. *Heine v. Allen Mem'l Hosp. Corp.*, 549 N.W.2d 821, 824 (Iowa 1996). Generally, contribution rests on common liability of two or more actors for a third-party's damages, even though their liability may rest on different grounds. *Schreier v. Sonderleiter*, 420 N.W.2d 821, 824 (Iowa 1988).

The District relies on the principle that one who must indemnify another is precluded from claiming contribution against that person. *Stowe v. Wood*, 199 N.W.2d 323, 327 (Iowa 1972). The District argues it was entitled to indemnity from the City because the City owed it an independent duty to conduct Safety City in a safe manner. The District also argues it was entitled to indemnity under section 886B of the Restatement (Second) of Torts, which provides in pertinent part:

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following.

. . . .

(e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect.

Restatement Second of Torts § 886B, at 344–45 (1979).

We agree that the City owed a duty to the District as well as to the children to conduct the program safely. But the District likewise owed a duty to the City to supervise and control the conduct of the children at Safety City. Moreover, the District's liability was not based on the City's creation of a dangerous condition or the District's negligent failure to discover the condition, but on its own negligent supervision of the children. Both indemnity and contribution are based on equitable principles. *Iowa Elec. Light & Power Co. v. General Elec. Co.*, 352 N.W.2d 231, 234 (Iowa 1984). The jury determined that Derek's death resulted from breaches by both parties. We conclude the District has no right of indemnity against the City which would preclude the City's claim for contribution.

## VI. Privilege

 The final issue raised by the District concerns a discovery matter. During discovery, the District learned that the police officers at Safety City attended debriefing sessions about the accident. The District sought disclosure of the statements made by Sergeant Wilson and Officers Magee and Eich at the sessions. The City resisted discovery and the officers refused to answer questions concerning the sessions on grounds the information discussed at these "critical incident stress debriefings" was protected by the mental health professional/patient privilege. *See* Iowa Code § 622.10. The district court agreed and denied the District's motion to compel.

 Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Iowa R. Civ. P. 122(a). A party seeking to resist discovery by asserting a privilege has the burden of showing the privilege exists and applies. *AgriVest P'ship v. Cent. Iowa Prod. Credit Ass'n*, 373 N.W.2d 479, 482 (Iowa 1985). Privileges are construed narrowly; when a privilege is based on a statute, the terms of the statute define the reach of the privilege. *Id.* The elements of the professional communications privilege involved here are: (1) the existence of a professional relationship between the mental health professional and the officers; (2) the information was acquired during this relationship; and (3) the information was necessary to enable the mental health professional to treat the officers skillfully. *See State v. Deases*, 518 N.W.2d 784, 787 (Iowa 1994).

We agree with the City that the matters discussed at the debriefing sessions are privileged. The record indicates the sessions were conducted by a licensed mental health professional for purposes of assisting the officers to deal with the stress of the traumatic incident they had just experienced. The District does not dispute that statements at those sessions were made during the relationship and were necessary for this treatment.

 The District contends the privilege does not apply because the communications were not confidential, given the number of persons present at the sessions. It is true the privilege may be lost if the communications are made in the presence of third parties. *See State v. Tornquist*, 254 Iowa 1135, 1155, 120 N.W.2d 483, 495 (1963). The fact that the sessions were not conducted on a one-on-one basis, however, does not defeat the privilege. *See In re Grand Jury Investigation*, 918 F.2d 374, 380 (3d Cir.1990) (observing federal privilege protective of group counseling practices). Nor does the presence of third parties defeat the privilege if they are present to assist the mental health professional in some way, or their presence is otherwise necessary to enable treatment. *Deases*, 518 N.W.2d at 788. Both officers Magee and Eich testified it was understood that nothing said during the sessions was to go beyond the group. Those present at the debriefings were either receiving counseling or assisting in providing the counseling services. We conclude the privilege is not defeated by the presence of third parties.

## VII. Conclusion

After having considered each of the issues raised by the District, we find the district court committed no prejudicial error in any of its rulings. Accordingly, we affirm the district court judgment.

**AFFIRMED.**

All justices concur except CADY, J., who takes no part.