**IN THE COURT OF APPEALS OF IOWA**

No. 13-2046
Filed December 24, 2014

**DEREK CROW,**
Plaintiff-Appellant,

**vs.**

**EDWIN E. SIMPSON, Individually and
d/b/a SIMPSON TRUCKING and
CITY OF ALBIA, IOWA,**
Defendants-Appellees.

_____

Appeal from the Iowa District Court for Monroe County, Myron L. Gookin,

Judge.

Eric Crow appeals the district court's denial of his motion for new trial on

his personal injury claim. **REVERSED AND REMANDED.**

Alfredo Parrish and Matthew M. Boles of Parrish Kruidenier Dunn Boles

Gribble & Gentry L.L.P., Des Moines, for appellant.

Paul Zingg of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellees.

Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Derek Crow appeals the district court's denial of his motion for new trial on his personal injury claim. Among other things, he maintains the district court erred because the jury's verdict was inconsistent, not supported by substantial evidence, and failed to effectuate substantial justice. Because we agree there was insufficient evidence to support the jury's verdict, we reverse and remand for a new trial.

### I. Background Facts and Proceedings.

In 2009, Crow filed a personal-injury lawsuit asserting Edwin Simpson, individually, and his business, Simpson Trucking (collectively "Simpson" hereinafter), were negligent in parking an end loader in the traveled portion of the roadway and in failing to warn motorists of its presence.[1] Following a trial, the jury returned a verdict finding Simpson was not negligent. In a motion for new trial, Crow argued the jury's verdict was not supported by sufficient evidence, especially in light of the jury instructions. The district court granted the motion, and Simpson appealed the ruling. The Iowa Supreme Court transferred the case to this court, and we affirmed. *See Crow v. Simpson*, No. 12-0837, 2013 WL 988958, at *5 (Iowa Ct. App. Mar. 13, 2013).

The second trial, which is the subject of this appeal, was held in October 2013. The jury heard evidence that on August 29, 2008, Simpson was doing street work in order to connect his lot to Albia's sewer and water lines. As part of the work, Simpson cut a hole in the northbound lane on North 9th Street, a solid-

---

[1] The original petition also named the city of Albia and the local electric cooperative as defendants. The district court entered judgment in their favor, and Crow did not appeal.

surface road. Although a city ordinance required Simpson to have a written permit issued by the city before starting the work, the person in charge of the permits was on vacation, so Simpson began work after receiving verbal permission from the sanitation commissioner. Once he finished the work, Simpson repaired the hole by filling it with flowable mortar, which takes approximately twenty-four hours to set up before it can be driven on. In order to protect the work site from being driven on, Simpson parked his Case end loader on the south end of the hole. On the north side of the hole, Simpson placed orange cones. Simpson did not place any barricades, flashing lights, or other warnings at the site.[2]

The same day, Crow and Brianna Baylor went on a date, and they discussed the possibility of Crow riding Baylor's moped. Around 2:30 a.m. on August 30, 2008, Crow met Baylor to ride her moped. Crow rode the moped around for a while and ultimately ended up on North 9th Street, where he wrecked the moped.

The last thing he remembered before the wreck was "seeing something big and yellow" and grabbing for the brakes. He remembered "hitting something and just this really, really bad headache, like, intense." As he was lying there, his whole body ached, explaining: "It was like my joints just exploded." After some time, Crow was able to pull himself up. He looked at his hand and "there was, like, gravel and sand and it was all mangled." He contacted Baylor and told her he had wrecked her moped. Crow then walked away and left the moped at the

---

[2] A reflectorized slow moving vehicle placard was attached to the back of the end loader.

scene. He called Zachariah Reed and another friend to pick him up, and they picked him up a couple blocks away from North 9th Street and drove him a couple of blocks back to his car.

At the same time, Baylor and Brooke Sinnott walked around looking for the moped. They found the moped by the end loader on North 9th Street and called Crow to tell him they found it. Baylor testified that the moped would not start although the lights still came on. Crow drove back to the scene and helped Baylor walk the moped back to her home.

Crow then drove home, and he bandaged his injured hand. Shortly thereafter, Crow complained that his head hurt, and he began projectile vomiting. His parents took him to the hospital emergency room. He was then airlifted to a Des Moines hospital where emergency surgery for an epidural hematoma was performed. Later, he was transferred to the University of Iowa Hospitals and Clinics, and a second surgery was performed on Crow's head.

Reed and his mother both testified they visited the scene the morning after the incident and took pictures as they found it. They testified they found Crow's class ring under the end loader. Reed testified he saw "skid marks leading up to the loader, plastic on the ground." When asked if he saw anything that looked like blood, Reed testified he saw that "something was smudged on the tire" that was in the shape of a hand.

Simpson admitted parking the end loader on the street. He admitted he did not place any orange cones or flashing light barricades behind the end loader. He agreed he did not follow the city ordinance with regard to placing barricades at the site.

After the close of evidence, Crow moved for a directed verdict on the question of Simpson's negligence. He maintained the evidence supported the jury being directed that Simpson was negligent per se, although he admitted that the question of comparative fault was still to be determined. The court denied the motion. The jury instructions included instructions regarding negligence per se.[3]

The jury returned a sealed verdict for Simpson, which stated:

**Question No. 1:** Was [Simpson] negligent/at fault?
Answer *"yes"* or *"no."*

ANSWER:     yes

*[If your answer is "no," do not answer any further questions.]*

**Question No. 2:** Was the negligence/fault of [Simpson] a cause of any item of damage to [Crow]?
Answer *"yes"* or *"no."*

ANSWER:     no

*[If your answer is "no," do not answer any further questions.]*

Crow then filed a motion for new trial, and Simpson resisted. The district court denied the motion.

Crow now appeals.

---

[3] Instruction number fifteen provided: "A driver of a motor vehicle shall not park a vehicle alongside any street excavation when the parking would obstruct traffic. The end loader owned by [Simpson] is considered a motor vehicle under Iowa law. A violation of this law is negligence." Instruction number sixteen provided:

> Pursuant to City of Albia Ordinance 175.10.3, when a street excavation occurs in the [city], the permit holder, [Simpson], is required to place, provide and maintain adequate barricades and warning lights meeting standards specified by the City to protect the public from hazard.
> Pursuant to [the city's ordinance] 96.03.1, during all excavations for building sewer installations, adequate barricades and warning lights shall be so placed as to protect the public from hazard.
> Violation of either ordinance is negligence.

## II. *Standards of Review.*

"The scope of our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion." *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001). If the motion for a new trial was based on discretionary grounds, we review the district court's decision for an abuse of discretion. *Id.* In contrast, if the motion for new trial was based on a legal question, we review for the correction of errors at law. *Id.*

Crow contends the jury's verdict that Simpson's negligence was not a cause of Crow's injuries was not supported by substantial evidence. An aggrieved party may have an adverse verdict vacated and a new trial granted if the verdict is not sustained by sufficient evidence. Iowa R. Civ. P. 1.1004(6). "Because the sufficiency of the evidence presents a legal question, we review the trial court's ruling on this ground for the correction of errors at law." *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). "In so doing, we must view the evidence in the light most favorable to the verdict, taking into consideration all reasonable inferences the jury may have made*." City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.*, 617 N.W.2d 11, 16 (Iowa 2000). "Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same findings." *Fry*, 818 N.W.2d at 134 (internal citations, alterations, and quotation marks omitted). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012).

### III. Discussion.

There was no dispute at trial that Crow crashed the moped and suffered injuries. The evidence presented at trial supported Crow's claim that he sustained his injuries by either crashing the moped in an attempt to avoid hitting the end loader or in hitting the end loader itself. Crow testified he was riding on North 9th Street when he saw the end loader just before the crash. After Crow called Baylor and told her he had crashed her moped, she located the moped by the end loader. The next day, when visiting the scene and taking photographs, Reed and his mother found Crow's class ring under the end loader. Reed testified he saw what appeared to be a bloody hand print on the end loader and stated he saw "skid marks leading up to the loader, plastic on the ground."

Crow's accident reconstructionist studied the photographs taken the day after the accident and identified a skid mark he believed was made by the moped. He did not examine the moped that was involved in the accident. Simpson's accident reconstructionist examined the moped that was involved in the accident. Both reconstructionists testified the damage of the moped did not support Crow's testimony that he collided head on with the back of the end loader. Rather, both testified the damage to the moped was consistent with the moped being put on its side. Nevertheless, all witnesses, including both accident reconstructionists, agreed that the moped had been crashed and suffered damage.

Addressing whether or not the verdict was internally inconsistent in its ruling on the motion for new trial, the district court concluded the jury could have found Simpson's negligence was not the cause of Crow's claimed injuries. The

court noted Crow "could have suffered a pre-collision medical event, such as a hemorrhage, that caused a blackout and consequent collision with [Simpson's] end loader." This conclusion was founded upon a statement made by Dr. Sherrill, the doctor who had performed the first of Crow's surgeries on the day of the incident. During his video-taped deposition, Dr. Sherrill was asked if Crow's injuries were "consistent with being involved in an accident, such as striking a piece of heavy equipment or a front-end loader." The doctor responded, in part:

> So what I know at the time I meet [Crow] is that he has a skull fracture, not necessarily over the area of the hemorrhage, but near it, as the notes suggest, with a closed container—in other words, not an open and depressed skull fracture—without associated broken neck, thoracic spine, heavy chest injuries.
> So I think if you told me that, you know, he had had a seizure and fallen off his motor scooter, I might have actually believed you because of the blood I found over the surface of his brain, not knowing which was which. And we have seen people spontaneously hemorrhage in that space fall onto the ground.
> Whilst I was even in Des Moines I had a very case of that, a young man at a movie theater, who hemorrhaged into that space, falls onto the ground in front of his wife, strikes his head, and of course renders himself a skull fracture. That was more clear because one watched him have a seizure and fall onto the ground. This, I wasn't present for any of it, so it would be very difficult to say that.

Taking the doctor's statement in the context in which it was made, and even viewing it in the light most favorable to the verdict, we do not believe this was sufficient evidence to support a verdict that Simpson's negligence was not the cause of the crash or any injury to Crow.

Further, the court noted evidence that Crow was involved in a subsequent accident where he was thrown from a motorcycle. Again, even viewing this evidence in the light most favorable to the verdict, we do not believe this was sufficient evidence to support the jury's verdict that Simpson's negligence was

not the cause of some item of damage to Crow. For even if the jury could have reasonably concluded Crow's head injuries were pre-existing or were caused in a subsequent event, or both, the evidence clearly established Crow suffered injuries discrete to the August 30, 2008 crash.

We acknowledge questions of causation are generally for the jury to decide. *See* Iowa R. Civ. P. 6.904(3)(j). Although we are loathe to take away a jury verdict, this is one of those exceptional cases where we must do so. We therefore reverse the district court's denial of Crow's motion for new trial and remand for a new trial. Because our ruling on this issue is dispositive, we decline to consider Crow's other claims of error.

### *IV. Conclusion.*

We find there is insufficient evidence to support the jury's verdict. We therefore reverse the district court's ruling and remand for a new trial.

**REVERSED AND REMANDED.**

Tabor, J., concurs; Danilson, C.J., dissents.

**DANILSON, C.J. (dissenting)**

I respectfully dissent. I do not disagree with the majority's analysis, but this accident only had one eyewitness, Crow, and his memory is suspect in light of the injuries and health issues he has suffered before, during, and after the accident. As a result, what actually happened to cause Crow's injuries is uncertain. I agree the facts provide every indication that Crow either collided with the end-loader or his moped slid on the road and ended up right next to the end-loader. Even so, the jury could have concluded that Simpson's negligence was not a substantial factor causing Crow's damages. The jury may have determined that if Crow was unable to see a big yellow end-loader that blocked one-half of the roadway, Crow would also have failed to observe orange cones or flashing light barricades had Simpson complied with the city ordinance. I would affirm.