# IN THE COURT OF APPEALS OF IOWA

No. 21-1758
Filed January 25, 2023

**MILVIA CASTANEDA, as next best friend to J.C., a minor,**
    Plaintiff-Appellant,

**vs.**

**PERRY COMMUNITY SCHOOL DISTRICT,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.

Plaintiff appeals an adverse jury verdict in a negligence action, raising instructional errors by the district court. **AFFIRMED.**

Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Scott Wormsley and Benjamin J. Kenkel of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Just days before his twelfth birthday, sixth grader J.C. injured his leg after jumping over a snow pile and sliding into an open school bus door outside of his middle school in Perry. His mother, Milvia Castenada, sued Perry Community School District on her son's behalf, alleging the school district was negligent in its snow and ice removal. The jury returned a verdict for the school district. J.C. appeals, raising instructional errors by the district court. We affirm.

## I.      Background Facts and Proceedings

On a snowy day in January 2017, J.C. stayed behind in computer class for a few minutes after the final bell rang to finish up a coding assignment. Once he was done, J.C. hurried to his locker to get his bag and ran to catch up with his friends. They began playing tag on the way through the school to their bus, trying to get there before it left without them.

When J.C. went out the school doors, he didn't see many people outside so he "figure[d] let's just hurry it up a little bit more." As he neared his bus, J.C. saw a small snow pile in front of him that he decided to jump over. When he came down, J.C. lost his footing and slid into the open bus door. The sharp edge of the door gashed his calf, exposing some muscle and tissue. A friend helped J.C. to the nurse's office. From there, he went to the emergency room, where his wound was stitched up. Because of scarring issues, J.C. had two surgeries on his leg in the months that followed his injury.

In December 2018, J.C.'s mother filed a petition on his behalf against the school district, claiming it was negligent under a premises-liability theory for "failing to timely and adequately remove the snow and ice from the sidewalk in front of the

bus loading zone." In its answer to the petition, the school district denied liability and raised J.C.'s comparative fault as an affirmative defense. The case proceeded to a jury trial in October 2021.

At trial, the school district's building and grounds director testified that he and another employee began removing snow and ice from the school's sidewalks, parking lots, and driveways around 2:00 a.m. on the day of J.C.'s accident. They went out again at noon to clear additional snow and ice because it had continued to snow off and on throughout the day. Though they made one pass through the bus loading zone with their plows that afternoon, they couldn't go back through after the buses arrived for dismissal. But the building and grounds director acknowledged that a shovel could have taken care of the snow that had accumulated near the bus loading zone, even with the buses there.

After the close of evidence, the jury found J.C. sixty-seven percent at fault and the school district thirty-three percent at fault, thus barring J.C.'s recovery. *See* Iowa Code § 668.3(1)(a) (2018). J.C. appeals, claiming the marshaling instruction for the school district's comparative fault defense materially misstated the law in two respects.

## II.    Standard of Review

"We review jury instructions to determine if they correctly state the law and are supported by substantial evidence." *Grefe & Sidney v. Watters*, 525 N.W.2d 821, 824 (Iowa 1994); *accord Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017) (reviewing alleged errors in jury instructions for correction of errors at law). "If instructions are erroneous, they must be prejudicial before we will order reversal." *Grefe & Sidney*, 525 N.W.2d at 824.

## III.    Analysis

Instruction 15, the marshaling instruction on the school district's comparative fault defense, instructed the jury:

> Defendant claims Plaintiff was at fault in one or more of the following particular(s):
> 1. Plaintiff failed to exercise reasonable care for his own safety, as explained in Instruction No. 12;
> 2. Plaintiff failed to keep a proper lookout, as explained in Instruction No. 17;
> 3. Plaintiff had knowledge of a condition that was known or obvious to a person in the Plaintiff's position, as explained in Instruction No. 18.

J.C. raises two challenges to this instruction on appeal: (1) the instruction "was an incorrect statement of the law because it included two 'reasonable care' specifications of fault in the first and third specifications"; and (2) the "proper lookout" specification "had no application to the facts of the case because [J.C.] testified that he saw the 'known' or 'obvious' condition—the snow and ice." The school district argues that J.C. only alerted the district court to the second challenge. We agree.

At the jury instruction conference, J.C.'s attorney told the court that he objected to "[j]ust one instruction":

> Instruction Number 15 instructs the jury that in the fault analysis that there's this proper lookout instruction. I don't think that's appropriate. I think that the proper lookout instruction conflicts with the known and obvious instruction given, that there's a section in the known and obvious instruction that indicates that if defendant was aware of the condition, then they can't blame the plaintiff. So in light of that then I also object to number 17 which is the definition of proper lookout.

He did not make any objection to duplicative reasonable care specifications in Instruction 15, as he does on appeal.

Under Iowa Rule of Civil Procedure 1.924, "[w]e may only consider on appeal those objections to instructions previously raised with the trial court." *Grefe & Sidney*, 525 N.W.2d at 824 (citing a former version of rule 1.924); *accord Boham v. City of Sioux City*, 567 N.W.2d 431, 438 (Iowa 1997) ("A party may not amplify or change an objection on appeal."). J.C. argues the record shows that he raised the reasonable care objection because in denying his motion for new trial, the district court stated: "Plaintiff *again* claims that with respect to Plaintiff's fault, a failure to maintain a proper lookout specification and a general reasonable care specification of negligence should not have submitted." (Emphasis added.)

There are two problems with this argument. First, as stated above, the record shows no such objection was made. If J.C. objected to the reasonable care specifications in an off-the-record discussion, he had to establish that discussion took place. *See In re Marriage of Ricklefs*, 726 N.W.2d 359, 363 (Iowa 2007) ("If a party wants to appeal unreported remarks, that party needs to establish the record, including any objections made, through a bill of exceptions under Iowa Rule of Civil Procedure 1.1001 or a statement of evidence under Iowa Rule of Appellate Procedure [6.806]."). He has not done so. Second, even if a motion for new trial could preserve a challenge to jury instructions that was not raised before closing arguments, which it cannot, J.C.'s motion also did not mention the objection he raises on appeal. *See Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007) ("[E]rror in jury instructions is waived if not raised before closing arguments are made to the jury."). Because J.C.'s objection to Instruction 15 in district court was limited to the proper lookout specification, we confine our review to that objection.

Turning to that objection, J.C. argues that because he "testified that he saw the snow and ice, the proper lookout instruction was not supported by the facts of the case." *See Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 150 (Iowa 1992) (observing that a court should "give an instruction when it states a correct rule of law having application to the facts of the case"). But as the jury was correctly instructed,[1] a "proper lookout means more than merely to look straight ahead, or more than seeing the object." *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 919 (Iowa 2017) (cleaned up). "Maintaining a proper lookout encompasses the duty to be careful of the movements of one's self in relation to *things seen* and that could have been discerned or seen in the exercise of reasonable care." *Coker*, 491 N.W.2d at 151 (emphasis added).

Thus, the fact that J.C. saw the snow pile did not preclude the district court from giving the proper lookout instruction because there was substantial evidence in the record, including a video of the accident, to show that J.C. was not careful of his movements in relation to that observed obstacle. *See id.* at 150 (finding substantial evidence supported a proper lookout instruction when the plaintiff saw another individual struggling to use a steel pipe but then turned his back to the individual and was struck by the pipe); *see also Ludman*, 895 N.W.2d at 920 (finding a proper lookout instruction should have been given when a plaintiff who

---

[1] Instruction 17, which defined "proper lookout" for the jury, read:
>    With respect to number 2 of Instruction No. 15, "proper lookout" is the lookout a reasonable person would keep in the same or similar situation. It means more than looking and seeing. It includes being aware of one's movements in relation to things seen or that could have been seen in the exercise of ordinary care.

was hit by a baseball in the dugout "failed to follow the ball from the pitcher to the batter's bat").  Finding no error, we affirm.

**AFFIRMED.**