# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2989

_____

Dico, Inc.,          *
             *
     Plaintiff - Appellant,    *
             *
   v.            *
             *  Appeal from the United States
Amoco Oil Company, Chevron    *  District Court for the Southern
Chemical Company; Monsanto    *  District of Iowa.
Company; Shell Oil Company; Bayer   *
Corporation,         *
             *
     Defendants - Appellees.   *

_____

Submitted: January 13, 2003

Filed: August 14, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Dico, Inc., appeals the district court's[1] grant of summary judgment dismissing its direct cost recovery action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601-9675.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Dico was compelled by the Environmental Protection Agency (EPA), pursuant to Unilateral Administrative Orders (UAO), to clean up contamination located on property it owned in Des Moines, Iowa. After incurring approximately $5.7 million in cleanup costs, Dico brought suit against Shell Oil Company, BP Products North America, Inc., Monsanto Company, Chevron Chemical Company, and Bayer Corporation (collectively "Customer Group") seeking direct recovery of those costs and any future costs or alternatively, seeking pro rata contribution. The district court dismissed Dico's direct cost recovery action holding that Dico, as a potentially responsible party (PRP), was limited to seeking contribution from the Customer Group. The district court also dismissed Dico's action for contribution because the Customer Group had entered into a judicially-approved consent degree with the EPA which included a grant of protection from other PRPs who might seek contribution. Dico appeals the district court's dismissal and we affirm.

I

In 1974, trichloroethylene (TCE) was detected in water coming from underground wells located near property owned by Dico and maintained by the Des Moines Water Works. The EPA designated the area the "Des Moines TCE Site" and placed it on the national priority list. The Des Moines TCE Site was divided into several "operable units." Operable Unit-2 ("OU-2") and Operable Unit-4 ("OU-4") (together "OU-2/4") were within Dico's property. Each was contaminated with TCE, and OU-4 was also contaminated with herbicides and pesticides.

Dico's corporate predecessor, Di-Chem, had operated a chemical formulation business on the Dico property until the 1970s. In 1994, the EPA issued two UAOs and Dico conducted two removal actions at OU-2/4. The Customer Group conducted a third removal action pursuant to an Administrative Order on Consent (AOC). The EPA also incurred costs associated with the removal actions at OU-2/4.

In 1996, the EPA signed a Record of Decision (ROD), confirming completion of the three removal actions at OU-2/4. The Customer Group requested settlement negotiations with the government regarding the costs associated with the cleanup efforts. Pursuant to CERCLA, 42 U.S.C. § 9622(e)(3), the EPA undertook a non-binding preliminary allocation of responsibility (NBAR) and allocated 61% of the responsibility to Dico and 39% to the Customer Group collectively. In April 1998, the EPA formally notified the Customer Group and Dico they were PRPs and provided each with copies of the NBAR and a proposed consent decree. Dico and the Customer Group were further notified that settlement with the government would provide protection from liability in the contribution action brought by Dico arising out of the same remediations.[2] Despite repeated invitations from the government, Dico did not respond and chose not to participate in settlement negotiations. On November 2, 1998, on the eve of reaching an agreement with the Customer Group, the government reminded Dico that a final consent decree would include contribution liability protection for the Customer Group. Dico remained steadfast in its refusal to participate in the negotiations.

On November 29, 1999, the government filed an action in district court and simultaneously lodged the proposed consent decree. As required by CERCLA, 42 U.S.C. § 9622(d)(2), the consent decree was published in the Federal Register; in response to which Dico submitted objections and comments. Dico moved to intervene in the action and to consolidate it with this cost recovery/contribution action. The district court granted Dico's motion to intervene but deferred ruling on Dico's motion to consolidate the two actions.

---

[2]Dico filed the present action seeking cost recovery or contribution from the customer group in 1997, before the conclusion of settlement negotiations between the government and the Customer Group.

On March 10, 2000, the government moved to enter the consent decree. Dico requested an evidentiary hearing arguing 1) a hearing was necessary because the government failed to provide a fair and complete record, and 2) Dico had a vested property interest in the contribution action which under the Fifth Amendment could not be "taken" without due process, i.e., an evidentiary hearing.

The district court denied Dico's request for an evidentiary hearing because Dico had been provided sufficient opportunity to supplement the record before and after the action was filed in district court. The district court also rejected Dico's due process challenge, holding Dico never had a right to contribution because its statutory contribution claim was at all times limited by 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States . . . in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."). The district court then granted the government's motion to enter the consent decree, and denied as moot Dico's motion to consolidate the contribution action with the action at bar. We affirmed the district court's decision on appeal. United States v. BP Amoco Oil PLC, 277 F.3d 1012, 1020 (8th Cir. 2002).

Thereafter, the Customer Group moved for summary judgment in this action arguing 1) CERCLA § 107(a)(1) and (a)(4)(B) barred Dico's direct action for cost recovery because Dico was a PRP, and 2) Dico's action for contribution was barred by the consent decree entered into between the Customer Group and the government. The district court granted the Customer Group's motion for summary judgment and this appeal followed. Originally, Dico appealed the dismissal of both causes of action but has subsequently abandoned its appeal of the dismissal of the contribution claim. Thus, the only issue before us is whether the district court properly dismissed Dico's direct cost recovery action.

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999). Rule 56(c) of the Federal Rules of Civil Procedure provides summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997). However, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997). For a non-moving party to defeat summary judgment, the alleged factual dispute must be "material to an essential element of the specific theory of recovery at issue." Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)).

The Customer Group argues Dico's direct cost recovery action is barred because Dico is a PRP as defined by CERCLA, and CERCLA limits actions between PRPs to those for contribution. Dico argues CERCLA does not prohibit direct cost recovery actions between PRPs.

"CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994). "Congress enacted CERCLA to facilitate the cleanup of hazardous waste sites, and to shift the costs of environmental response from taxpayers to the parties who benefitted from the use or disposal of the hazardous substances." Aviall Servs., Inc. v. Cooper Indus., Inc., 263 F.3d 134, 136-37 (5th Cir. 2001) (citing OHM Remediation Serv. v. Evans Cooperage Co., Inc., 116 F.3d 1574, 1578 (5th Cir. 1997)). CERCLA § 107(a)(1)-(4), 42 U.S.C. § 9607(a)(1)-(4), defines the parties responsible for cleanup costs (PRPs) as:

1. [T]he owner or operator of . . . [the] facility,

2. Any person who at the time of disposal of any hazardous substance owned or operated . . . [the] facility . . .,

3. Any person who . . . arranged for disposal or treatment of . . . hazardous substances . . . at the facility . . ., and

4. Any person who accepts . . . hazardous substances for transport to [the facility for disposal or treatment].

CERCLA § 107(a)(4)(A) and (B) makes PRPs liable for:

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

Parties incurring cleanup costs pursuant to an order from the EPA, who believe they are not responsible for the contamination, may bring a claim in federal court to recover their cleanup costs. United States v. Dico, Inc., 136 F.3d 572, 574 (8th Cir. 1998). The statute provides two avenues for recovery. First, § 107 allows the government or an "innocent" private party to recover cleanup costs from PRPs through a direct cost recovery action. See 42 U.S.C. § 9607(a)(4) (stating PRPs "shall be liable for . . . (A) all costs of removal or remedial action incurred by the United States Government . . . [and] (B) any other necessary costs of response incurred by any other person . . . ."). Under § 107, PRPs are held jointly and severally liable for the costs of cleanup. Thus, one PRP may bear a disproportionate share of the cleanup costs. Accordingly, though CERCLA as originally drafted contained no express provision authorizing contribution claims between PRPs, courts interpreting CERCLA found such causes of action impliedly authorized. Key Tronic, 511 U.S. at 816 n.7.

In 1986, as part of the Superfund Amendments and Reauthorization Act (SARA), 42 U.S.C. §§ 9601-9675, Congress amended CERCLA and provided for an explicit right of contribution between PRPs under § 113(f)(1). Thereafter, courts held the express language providing for a right of contribution implied an intent to limit PRPs to claims for contribution, and to preclude actions between PRPs for direct recovery. See, e.g., N. J. Turnpike Auth. v. PPG Indus., Inc., 197 F.3d 96, 104 (3d Cir. 1999) ("The Turnpike is a PRP . . . and its action against other PRPs is properly characterized as a section 113 action."); Axel Johnson, Inc. v. Carroll Carolina Oil Co., 191 F.3d 409, 415 (4th Cir. 1999) ("[A]s a general rule any claim for damages made by a potentially responsible person - even a claim ostensibly made under § 107 - is considered a contribution claim under § 113."); Bedford Affiliates v. Sills, 156 F.3d 416, 424 (2d Cir. 1998) ("[A] party that is itself liable may recover only those costs exceeding its pro rata share of the entire cleanup expenditure, i.e., contribution under § 113(f)(1)."); Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 350 (6th Cir. 1998) ("Claims by PRPs . . . seeking costs from other PRPs are necessarily actions for contribution . . . governed by . . . § 113(f)."); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1306 (9th Cir. 1997) ("[U]nder CERCLA, a PRP does not have a claim for the recovery of the totality of its cleanup costs against other PRPs, and a PRP cannot assert a claim against other PRPs for joint and several liability."); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996) ("Redwing is a responsible party under CERCLA, and therefore, its claims against other allegedly responsible parties are claims for contribution."); United States v. Colo. & E. R. R., 50 F.3d 1530, 1536 (10th Cir. 1995) (holding any claim for apportionment of cleanup costs between PRPs is a claim for contribution); United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 101 (1st Cir. 1994) (holding plaintiffs who were by their own admission liable parties, were in effect asserting an action for contribution); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994) (holding an action by one PRP against other jointly and severally liable parties is governed by section 113(f)); Amoco Oil

Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989) (holding actions between two liable parties are actions for contribution).

Dico and the Customer Group clearly fall within § 107(a)(1)-(4)'s definition of a PRP. As such, any action brought by Dico against the Customer Group to recoup its cleanup costs must be for contribution. Dico, however, citing Key Tronic, argues its direct action is permissible under CERCLA. Key Tronic involved a claim for attorney's fees incurred by one PRP in connection with an action for contribution against another PRP. 511 U.S. at 811. The plaintiff sought to recover attorney's fees arguing §§ 107 and 113 impliedly provided for an award of attorney's fees to prevailing parties. In rejecting the argument, the Court described § 107 as "impliedly authoriz[ing] private parties to recover cleanup costs from *other* PRP's." Id. at 818 (emphasis added). Dico contends Key Tronic establishes the proposition that "private parties" is synonymous with "PRPs," and the direct recovery action found in § 107 is available to private parties and PRPs equally. We disagree. Key Tronic did not involve the issue before us; namely, whether a PRP may pursue an action for direct recovery against another PRP. Rather, Key Tronic dealt with whether a PRP could claim attorney's fees in a contribution action brought against another PRP. In that context, it was appropriate for the Court to use the terms "private parties" and "PRPs" together. More importantly, however, the language cited by Dico was used in reference to the implicit right to seek contribution found in § 107, id. at 816, 818, prior to SARA. Thus, we find no support for Dico's argument in the language of Key Tronic. Conversely, there is overwhelming authority among the circuits to support the Customer Group's argument that PRPs are limited to actions for contribution. Accordingly, we hold Dico may not bring an action against the Customer Group for direct recovery unless it can establish it falls within one of the enumerated defenses set out in § 107(b).

Dico next argues it is "innocent" of any wrongdoing and is not subject to CERCLA's prohibition against direct recovery actions between PRPs. The Customer

Group argues that only PRPs who qualify for one of the enumerated statutory defenses may bring an action for direct recovery against another PRP, and Dico fails to qualify for any of the defenses.

CERCLA § 107(b), 42 U.S.C. § 9607(b) provides:

There shall be no liability under [CERCLA § 107(a)] for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by - (1) an act of God; (2) an act of war; (3) an act or omission of a third party other . . . than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . if the defendant establishes . . . that (a) he exercised due care with respect to the hazardous substance concerned . . . and (b) he took precautions against foreseeable acts or omissions of any such third party . . . .

When one of the enumerated CERCLA defenses applies a PRP is deemed innocent; and an action between an innocent party and another PRP is not between two liable parties. See, e.g., Morrison Enter. v. McShares, Inc., 302 F.3d 1127, 1133 (10th Cir. 2002) ("[A] party that can show that it is entitled to one of the defenses under § 9607(b) should be able to sue under § 9607(a); after all, such a party is not a PRP for purposes of the statute."); accord Bedford Affiliates, 156 F.3d at 425; Axel Johnson, Inc., 191 F.3d at 416.

Dico, however, does not contend it qualifies for any of the enumerated defenses. Instead, it argues we should adopt a judicially created "innocent landowner" exception recognized in a line of Seventh Circuit and various district court cases. See NutraSweet Co. v. X-L Eng'g Co., 227 F.3d 776, 784 (7th Cir. 2000) (noting an innocent landowner who did not contribute to the contamination could bring a direct recovery action); Rumpke of Ind., Inc. v. Cummins Engine Co., 107 F.3d 1235, 1241-42 (7th Cir. 1997) (holding landowner who was not responsible for

any of the waste entitled to sue under § 107); AM Int'l, Inc. v. Datacard Corp., DBS, Inc., 106 F.3d 1342, 1347 (7th Cir. 1997) (same); Akzo Coatings, Inc., 30 F.3d at 764 (same); Soo Line R.R. v. Tang Indus., Inc., 998 F. Supp. 889, 894-95 (N.D. Ill. 1998) (same); Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc., 925 F. Supp. 624, 630-31 (E.D. Mo. 1996) (same); Wolf, Inc. v. L. & W. Serv. Cent., Inc., No. 4: CV 96-3099, 1997 WL 141685, at *6-8 (D. Neb. Nov. 27, 1997) (holding landowner/plaintiff who alleged it did nothing to contribute to contamination allowed to proceed with § 107 action).

Section 107(a) imposes liability on PRPs "[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this section . . . ." (emphasis added). Thus, the plain language of the statute militates against Dico's argument. Additionally, other circuits have held any expansion of the list of defenses beyond those specifically delineated in the statute would circumvent the underlying purpose of CERCLA. See Bedford Affiliates, 156 F.3d at 425 (declining to carve out a judicially created defense under CERCLA that Congress itself chose not to create); Axel Johnson, 191 F.3d at 416 ("If an innocent party exception [to § 107] is even possible . . . it would . . . seem prudent to limit its applicability to those who can make out one of the defenses . . . § 107 itself provides."); Morrison Enter., 302 F.3d at 1134 (holding the exception created by the Seventh Circuit does not square with the underlying purposes of CERCLA).

We need not, however, decide whether to adopt the "innocent landowner" exception because we have already concluded Dico is not an innocent landowner. In a previous installment of this litigation, United States v. Dico, Inc., 266 F.3d 864, 875 (8th Cir. 2001), Dico appealed the district court's finding that Dico had contributed to contamination at the Des Moines TCE Site. Id. at 868. On appeal, we held "[t]he record, taken as a whole, shows evidence in support of each basis for the District Court's conclusion that Dico released TCE on its property." Id. at 875. Dico's allegations of innocence notwithstanding, we will not re-examine our prior holding

absent compelling circumstances - none of which are present in this appeal. <u>McCurry</u> <u>v. Tesch</u>, 824 F.2d 638, 640 (8th Cir. 1987).

III

The district court's grant of summary judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.